UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

GWENDOLYN CREER, an individual,

   Plaintiff,

 v.

AT&T UMBRELLA BENEFIT PLAN NO. 1,

   Defendant.

No. 2:09-cv-02210-MCE-CKD

MEMORANDUM AND ORDER

Through this action, Plaintiff Gwendolyn Creer ("Plaintiff") challenges the denial of disability benefits payable under a benefit plan established by her employer, AT&T.  That plan, known as AT&T Umbrella Benefit Plan No. 1, is an employee benefit plan subject to the provisions of the employee Retirement Security Retirement Act, 29 U.S.C. §§ 1001, et seq. ("ERISA"), and is being sued directly by Plaintiff in the instant matter.  Both Plaintiff and the AT&T Umbrella Benefit Plan No. 1 ("Defendant Plan") have now moved for summary judgment.

///

1

As set forth below, the summary judgment requests are premature because the investigation required to make an accurate disability assessment by Defendant Plan with respect to the payment of benefits has not yet occurred. The cross-motions for summary judgment will be denied, without prejudice, on that basis and the matter remanded for further proceedings consistent with this Memorandum and Order.[1]

## BACKGROUND

Plaintiff worked for AT&T as a circuit designer for 21 years between 1985 and 2006. In that position, her job duties were primarily sedentary in nature, involving computer and telephone use. In early 2005, after being diagnosed with disseminated sarcoidosis (a kind of tissue inflammation) affecting the liver and spleen, Plaintiff was approved by Defendant Plan for short term disability ("STD") and remained on STD status until October 31, 2005.

After attempting to return to full time work status in November of 2005, Plaintiff was again approved for STD based not only on sarcoidosis, but also due to liver complications, diabetes and high blood pressure. Plaintiff thereafter remained on STD status until June of 2006.

///
///

---

[1] Because oral argument was not of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

1  According to Plaintiff, she has to take more than 20 medications
2  per day to manage her various symptoms, and achieving the correct
3  balance of those medications is difficult since some drugs
4  designed to alleviate one condition make others worse.
5     Plaintiff again tried to return to work on July 10, 2006,
6  but by September 8, 2006 decided she was no longer able to do so
7  because of difficulty sleeping, ongoing headaches and hard to
8  control diabetes.  Thereafter, on or about October 2, 2006,
9  Defendant Plan denied Plaintiff her remaining STD benefits (which
10 amounted to only five days), and by disallowing those benefits
11 also deprived plaintiff of the opportunity to qualify for long
12 term disability benefits ("LTD"), since Defendant Plan required,
13 as a prerequisite to qualifying for LTD, that Plaintiff exhaust
14 the full 52 weeks of available STD benefits.
15     By letter dated October 6, 2006, Plaintiff's treating
16 doctor, Rachel Callaghan, strongly objected to Defendant's
17 denial, explaining that the sarcoidosis had to be treated with
18 Prednisone, a medication which both worsened Plaintiff's diabetes
19 and also compounded the fatigue caused by sarcoidosis.  Plaintiff
20 thereafter appealed.
21      Pursuant to a Service Agreement, Defendant Plan alleges it
22 delegated the entire claims review process to an independent
23 company, Sedgwick Management Services.  According to Defendant,
24 Sedgwick was given full and complete discretion by the Plan
25 Administrator in processing disability benefit claims.  Decl. of
26 Nancy Watts, ¶ 7.
27 ///
28 ///

Following Plaintiff's January 16, 2007 appeal, Sedgwick had an outside vendor, National Medical Review, obtain review of Plaintiff's medical records from three different specialists in the practice areas invoked by Plaintiff's various conditions. While all three reviewing physicians opined that Plaintiff was in fact able to perform the relatively sedentary duties of her position, each reviewer carefully limited the scope of his review to his own area of expertise and failed to assess either the gravity of Plaintiff's medical conditions, taken as a whole, or what Plaintiff alleges was her most serious single condition, sarcoidosis.

Dr. Lyle Mitzner, an endocrinologist, appears to only comment on Plaintiff's diabetes, concluding that "there is no indication that her diabetes, per se, is preventing her from functioning at work."  Administrative Record ("AR") 0498. Dr. Mitzner carefully delineates the limited nature of his review and the fact that it addresses neither Plaintiff's condition as a whole or her sarcoidosis, stating as follows:

> I have been asked as an endocrinologist to review these records.  An internist and a pulmologist will be reviewing this and commenting on her overall medical condition and her sarcoidosis, respectively..... Whereas the constellation of her symptoms together and her multiple medical conditions together may indeed make it difficult or even impossible, I am going to leave that decision to the other doctors reviewing this file.

AR 0497.

///
///
///
///

4

1    Despite Dr. Mitzner's indication that an internist would
2 comment on the effect of Plaintiff's condition taken as a whole,
3 the retained internal medicine specialist, Dr. Jose A. Perez,
4 Jr., declines to make any such overall assessment, stating as
5 follows:
6    I will defer to the pulmonoligist and endocrinologist reviewing this file to make a determination on the
7    sarcoid and the type II diabetes mellitus both of which appear to be complicated disorders and related in that
8    the treatment for the sarcoidosis affected the control of type II diabetes, however, the determination will be
9    left to the subspecialist.

10 Id. at 0494.

11    In explaining his rationale that Plaintiff was not disabled
12 from an internal medicine perspective, Dr. Perez reiterates the
13 limited scope of his review:
14    The patient has a complex medical history including sarcoidosis, type II diabetes, hypertension, drug rash,
15    and hyperlipidemia.  The first two diagnoses are being deferred to the subspecialists reviewing the file.  The
16    diagnoses from and internal medicine perspective, hypertension, drug rash and hyperlipidemia, at this
17    point do not impact the claimant to be able to carry out sedentary work duties.  However, these are minor
18    diagnoses in comparison to the diagnosis of sarcoidosis and type II diabetes for which there exists
19    documentation that will be evaluated by the subspecialist reviewing the file.
20

21 Id. at 0495.

22    The third and final physician retained to assess Plaintiff's
23 disability status, pulmonoligist Clayton T. Cowl, goes no further
24 in shedding light on the effect of Plaintiff's sarcoidosis,
25 despite the expectation of both Dr. Mitzner and Dr. Perez that he
26 would do so.  According to Dr. Cowl,
27    The claimant is an unfortunate 56-year old female who has been affected clinically by a systemic illness and
28    reportedly more so by attempts at controlling her

5

>     underlying diabetes that resulted from treatment of the
>     initial condition.  Specific comments in regards to her
>     diabetes and abdominal sarcoidosis will be addressed by
>     other reviewers.  From a purely pulmonary perspective
>     the objective data do not suggest a functional
>     limitation of such a severity that would preclude her
>     from performing her essentially sedentary duties as a
>     facilities administrator as defined.

Id. at 0502.

Relying heavily on the opinions of these physicians, Defendant Plan affirmed the denial of Plaintiff's claim by letter dated February 28, 2007.  As Defendant concedes, in finding Plaintiff not to be disabled, that denial letter "explained the independent physician advisors' conclusions and reasoning in detail."  Def.'s Opening Mem., ECF No. 36, 16:14-16.  Defendant Plan argues that it did not act arbitrarily by affording the opinions of its reviewers more weight than Plaintiff's treating physician, Dr. Callaghan, who felt that Plaintiff's constellation of acute issues made her treatment difficult and further made it "very, very difficult for her to work".  AR 0261-0262.

**STANDARD**

Plaintiff's opening points and authorities appear to assume the applicable standard of review in this ERISA matter is the so-called "abuse of discretion" standard.  In her reply points and authorities, however, she appears to question whether Defendant Plan adequately delegated complete and unfettered authority to Sedgwick in making benefits determinations so as to invoke the abuse of discretion standard in reviewing those determinations.

1      It does appear that the Plan delegated its administration to
2 a Plan Administrator who was expressly given discretionary
3 authority to interpret the terms of the plan and to grant, deny,
4 and determine eligibility for benefits under the Plan.  AR 1441,
5 1452.  Such unequivocal grant of authority triggers review under
6 an abuse of discretion standard which the Administrator's
7 decisions are entitled to judicial deference unless they are
8 determined to be "arbitrary and capricious".  See, e.g.,
9 Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989).
10 The Plan Administrator was further accorded the authority to
11 delegate all or some of its responsibilities and powers to other
12 individuals and/or entities, which would include Sedgwick.  AR
13 1441.  According to Defendant, the Plan did in fact delegate "the
14 entire claims review process to Sedgwick, including full and
15 complete discretion to interpret the terms of the Plan and to
16 decide whether to approve or deny STD and LTD claims for benefits
17 under the Disability Plan, effective April 23, 2001."  Decl. of
18 Nancy Watts, ¶ 7.
19      While the precise terms of the delegation of authority to
20 Sedgwick are not completely clear, Exhibit D to the Watts
21 Declaration is entitled "Agreement for Administration of
22 Disability Claims under SBC (AT&T's predecessor) Disability
23 Plans," a moniker which certainly points towards the delegation
24 of Plan Administration to Sedgwick.  Based on that Agreement and
25 the Watts Declaration, the Court will assume for purposes of this
26 Memorandum and Order that full authority to make disability
27 determinations was indeed granted to Sedgwick.
28 ///

As set forth below, since the Court concludes that Defendant Plan's decision in this case fails under even the more deferential abuse of discretion review, whether an abuse of discretion or de novo applies makes little difference in this particular case.[2]

To find clear error under an abuse of discretion standard, a court must possess a "definite and firm conviction that a mistake has been committed." Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011). Given that deference, a Plan Administrator's decision should not be disturbed so long as it is deemed "reasonable". Id. at 675. The inquiry as to reasonableness is founded on an assessment of whether conduct is arbitrary and capricious, and therefore unreasonable. Clark v. Wash. Teamsters Welfare Trust, 8 F.3d 1429, 1432 (9th Cir. 1993).

## ANALYSIS

In moving for summary judgment in its entirety in accordance with the various allegations of her complaint, Plaintiff seeks a judicial determination that she has been, and continues to be, totally disabled within the meaning of the Defendant Plan. She further seeks an adjudication as to her right to past and future benefits under the plan, as well as statutory penalties under ERISA, attorney's fees and costs incurred.

///

---

[2] Absent an unequivocal grant of discretion in making disability determinations, under ERISA a denial of benefits is reviewed de novo. Firestone, supra, 489 U.S. at 115.

The papers submitted by Plaintiff in connection with the motions now before the Court, however, suggest that a different remedy is being sought.  Plaintiff's Memorandum filed in Opposition to Defendant's motion, and in reply as to her own, states plainly that "Plaintiff's motion asks the Court to "remand her claim for a full and fair review that complies with the minimum requirements of ERISA and its implementing federal regulations." Pl.'s Opp'n/Reply, ECF No. 50, 2:2-4.  Plaintiff goes on to request that defendant reinstate her STD benefits during the pendency of that review, citing the Ninth Circuit's decision in Pannebecker v. Liberty Life Assur. Co., 542 F.3d 1213 (9th Cir. 2008).  Id. at 5:14-18.  In the conclusion section of her reply memorandum, Plaintiff reiterates her request for both remand for additional review and for reinstatement of benefits pending that review.  Id. at 8:10-12.  Plaintiff goes so far as to cite cases declining to grant summary judgment where a defendant fiduciary has failed to consider all of Plaintiff's medical conditions on grounds that genuine issues of fact remained as to whether Plaintiff was disabled or not.  Pl.'s Opening Mem., 10:14-22.

   In determining that Defendant Plan did not consider all of Plaintiff's various symptomatology in this case, the Court need go no further than to compare the opinions of the reviewing specialists retained by Sedgwick to evaluate Plaintiff's conditions -- opinions upon which Defendant Plan purported to base its decision affirming the denial of Plaintiff's STD benefits.  Those opinions, as delineated above, individually address discrete components of Plaintiff's condition without assessing her condition as a whole.

9

The endocrinologist, Dr. Mitzner, while concluding that Plaintiff's diabetes per se did not prevent her from working, specifically noted that her symptoms considered together might mandate a different result.  He expressly left that overall assessment "to the other doctors reviewing this file" (AR 0497), but neither of the other two reviewing physicians assumed that responsibility.  Dr. Perez looked only at hypertension, drug rash and hyperlidemia in finding Plaintiff not preluded from performing sedentary work activities, yet conceded that those diagnoses were "minor" compared to sarcoidosis and diabetes, evaluations he left to other subspecialists.  AR 0495.  Finally, the pulmonoligist, Dr. Cowl, also limited his opinion to pulmonary issues other than sarcoidosis, with any "specific comments" as to Plaintiff's abdominal sarcoidosis again to be "addressed by other reviewers."   AR 0502.

As the above equivocations make clear, one of Plaintiff's most problematic diagnoses, abdominal sarcoidosis, went completely unaddressed by the reviewing physicians.  Moreover, despite Dr. Mitzner's assumption that Plaintiff's symptoms would be addressed on a whole by other doctors, that never happened. Finally, none of the doctors opined on the combined effect of Plaintiff's multiple medications, an area of concern that Plaintiff's treating physician, Dr. Callaghan, prominently underscored.

The Court agrees with Plaintiff that this case is strikingly similar to the circumstances encountered by the Central District in Toven v. Metopolitan Life Ins. Co., 2008 WL 5101727 (C.D. Cal. 2008).

In <u>Toven</u>, the defendant obtained two independent physician evaluations, one from Dr. Lyle Mitzner, the same doctor whose opinion was also offered here.  The <u>Toven</u> court found the disability plan's denial of benefits to be an abuse of discretion.  The court's remarks in making that determination are equally applicable here:

> MetLife does not appear to have considered the global nature of Plaintiff's health concerns.  Although MetLife obtained two independent physician evaluations, neither doctor was asked to, or did, examine the overall state of Plaintiff's health.  Rather, discrete issues were carved out for each doctor to review in isolation.  Dr. Mitzner evaluated Plaintiff's diabetes, and opined solely on Plaintiff's ability to function from "an endocrinologic/glycemic perspective."
> Dr. Polsky evaluated only the psychiatric issues, and did not evaluate Plaintiff's physical condition.

<u>Id.</u> at *11.

As <u>Toven</u> goes on to note,

> It may be that none of Plaintiff's health problems was disabling on its own, but whether the particular combination of problems he had might together be disabling is a different question -- one that was not sufficiently addressed....  Thus to the extent the individual pieces of Plaintiff's health puzzle may have been evaluated at all, they were not necessarily seen in the full context.

<u>Id.</u> at *12.

Because it determined that MetLife did not properly investigate or evaluate the plaintiff's claim for disability benefits, <u>Toven</u> found that denial to be an abuse of discretion, and ordered the matter remanded to MetLife for a proper determination.  <u>Id.</u> at *13.

///

///

///

11

1    In the view of this Court, Toven is directly on point with
2 the present matter and its reasoning is persuasive.  It was, per
3 se, unreasonable for Defendant Plan to rely on piecemeal
4 evaluations that not only failed to consider Plaintiff's
5 symptomatology as a whole, but also pointed to necessary
6 evaluations (like an assessment of Plaintiff's abdominal
7 sarcoidosis) that never occurred.  Like Toven, this Court finds
8 that failure to be arbitrary and capricious and therefore an
9 abuse of discretion on the part of Defendant Plan.  Also like
10 Toven, this matter must be remanded to Defendant Plan for further
11 evaluation in that regard.  Until such assessment has occurred,
12 any determination of Plaintiff's ultimate entitlement to
13 disability benefits would be premature, and summary judgment
14 would be inappropriate.  See, e.g., Mazur v. Pacific Telesis
15 Group Comprehensive Disability Benefits Plan, 2009 WL 1068881 at
16 *14 (N.D. Cal. 2009).

17    Another factor that should be noted as bearing on the
18 inadequacy of Defendant Plan's determination in this matter is
19 the fact that its denial of appeal failed to even mention the
20 fact that Plaintiff had not only applied for Social Security
21 Disability Insurance ("SSDI") benefits, but had actually been
22 determined to be disabled and awarded SSDI benefits.  See AR
23 503-504.  Although Defendant Plan argues that approval of
24 benefits under Social Security and pursuant to ERISA are subject
25 to different criteria, that does not address the fact that the
26 SSDI determination was never even considered, at least on the
27 basis of Defendant's February 28, 2007 denial.  Id.
28 ///

12

1 As the Toven court points out, the fact that the disability
2 standard for SSDI purposes may be different "does not mean
3 Plaintiff's social security award was irrelevant." Toven,
4 2008 WL 5101727 at *13.  The Ninth Circuit has similarly found it
5 necessary to take into effect social security disability.  In
6 Letvinuck v. Aetna Life Ins. Co., 2011 WL 2469222 (9th Cir.
7 2011), the Court found that Aetna abused its discretion in
8 denying the plaintiff both STD and LTD benefits, in part due to
9 Aetna's failure to take into account a social security disability
10 award.  The Court explained:

> Aetna gave no weight to the Social Security
> Administration's (SSA decision that Letvinuck was
> disabled, nor did it provide an explanation.  Although
> Aetna is not bound by the SSA's disability
> determination, now distinguishing the SSA's contrary
> conclusion may indicate a failure to consider relevant
> evidence... In sum, evidence of a Social Security award
> of disability benefits is of sufficient significance
> that failure to address it offers support that the plan
> administrator's denial was arbitrary, an abuse of
> discretion.

Id. at *2.

The Ninth Circuit's determination that Aetna abused its
discretion in denying Letvinuck benefits under the circumstances
provides yet another reason for this Court to similarly conclude
that Defendant Plan's denial here was also an abuse of
discretion.

Having thus determined that Defendant Plan's denial was
arbitrary and capricious for all the reasons stated above, the
Court must next address Plaintiff's request that her disability
benefits be reinstated while this matter is being remanded to
Defendant Plan for further proceedings.

///

1  Where a Plan Administrator terminates continuing benefits as a
2  result of arbitrary and capricious conduct, there is authority to
3  the effect that the claimant should continue receiving benefits
4  until the Administrator properly applies the Plan's provisions.
5  Pennebecker v. Liberty Life Assur. Co. Of Boston, 542 F.3d 1213,
6  1221 (9th Cir. 2008).  Reinstatement of benefits in that regard,
7  however, applies only "if the claimant would have continued
8  receiving benefits absent the administrator's arbitrary and
9  capricious conduct."  Id.
10     Application of Pennebecker to the present case, however, is
11 problematic.  Given the shortcomings of Sedgwick's investigation
12 as set forth above, we cannot say on the record before us whether
13 Plaintiff would have continued to receive benefits or not, and we
14 are remanding the matter back to Defendant Plan for further
15 consideration in that regard.  Moreover, and in any event, the
16 remaining period of short term disability benefits available in
17 this matter appears to encompass only five days, and the appeal
18 in question pertains only to STD.  Therefore there are no
19 continuing retroactive benefits due as a result of Defendant
20 Plan's denial of Plaintiff's appeal in any event.
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

14

**CONCLUSION**

For all the reasons outlined above, the cross-motions for summary judgment in this matter (ECF Nos. 31 and 36) are DENIED as premature. The matter is remanded to Defendant Plan for further proceedings consistent herewith.

IT IS SO ORDERED.

Dated: February 6, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE